CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAY 22 2015

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **HASSAN RAASHANN SHABAZZ,** | ) | **Civil Action No. 7:14-cv-00457** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **B.J. LOKEY, et al.,** | ) | **By:   Hon. Jackson L. Kiser** |
| **Defendants.** | ) | **Senior United States District Judge** |

Hassan Raashann Plaintiff, a Virginia inmate proceeding pro se, filed a civil rights

complaint pursuant to 42 U.S.C. § 1983, naming officials of the Augusta Correctional Center

("ACC") and the Virginia Department of Corrections ("VDOC") as defendants. Plaintiff alleges

that Defendants violated the First and Fourteenth Amendments, Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), and Virginia law by confiscating documents

from his cell. Defendants filed a motion for summary judgment, invoking, inter alia, qualified

immunity, and Plaintiff responded pursuant to Rule 56(d), Fed. R. Civ. P., declaring he cannot

present facts essential to justify its opposition. In light of the perspectives required by Rule 56, I

do not need to defer ruling on or allow additional time for the motion for summary judgment, and

I grant Defendants' motion for summary judgment in part as to Plaintiff's due process claim and

deny it in part as to Plaintiff's religious claims.

### I.

Correctional staff searched Plaintiff's cell on May 1, 2013, and initially confiscated some

of Plaintiff's documents. These documents were reviewed by defendants Lokey, an institutional

investigator, and Leatherwood, a gang specialist, who investigated whether the documents

contained prohibited gang material. Lokey and Leatherwood ultimately determined that a few of

the documents contained prohibited "Five Percenter" material and seized them as contraband, but

the other initially confiscated documents were returned to Plaintiff.[1] The items that were not returned to Plaintiff were alleged "Five Percenter" documents, business plans, stock-certificate numbers, a handwritten autobiography, and a collection of songs, poems, and letters. Plaintiff explains that the alleged "Five Percenter" documents were not about NGE but were pages from *The Supreme Wisdom*, a religious lesson book for NOI adherents. Plaintiff repeatedly emphasizes that all of his religious lessons are NOI lessons and that he has never been a Five Percenter or practiced NGE.[2] Specifically, the confiscated documents were: "Actual Facts," "Student Enrollment," "Lost Found Muslim Lesson No. 1," "Lost Found Muslim Lesson No. 2, 'First Term Examination Assignment of Mr. Elijah Muhammad,'" "The Problem Book," "The Supreme Mathematics," "The Supreme Alphabet," and "The Completion of the Nine(9) 33 Cycles." Plaintiff alleges, and Defendants, notably, do not contradict, that all of these confiscated documents were created by NOI figures "Master Fard Muhammad" and "the Most Honorable Elijah Muhammad," who had no involvement with NGE. Plaintiff claims he cannot satisfy NOI requirements to memorize lessons from *The Supreme Wisdom* due to their confiscation, explaining that "*The Supreme Wisdom* Lessons are a part of a strict regimen . . . . All Registered Muslims must read and study these lessons . . . . until [they] . . . can recite them by heart, but they

---

[1] "Five Percenters" is a colloquialism for people who identify with the belief system known as "The Nation of Gods and Earths," or "NGE," which is an offshoot of the Nation of Islam ("NOI"). The "Five Percenters" have been identified by the VDOC as a security threat group due to the VDOC's finding that NGE identifies itself as a gang and a separatist hate group. The VDOC has a zero-tolerance policy for gang operations. As a result, inmates cannot join, recruit for, associate with, or participate in NGE activities while incarcerated, and similarly, inmates are prohibited from owning any correspondence, documents, or drawings that might indicate involvement with NGE. Because the VDOC believes "Five Percenters" use secret codes to communicate and organize within the prison environment, the VDOC prohibits inmates from possessing identifiable "Five Percenter" literature or correspondence.

[2] In their Answer, Defendants allege that the VDOC has classified Plaintiff as a "Five Percenter" since August 8, 2007. In response, Plaintiff explains that his NOI emblem was confiscated as NGE contraband at that time. He subsequently filed a grievance, explaining that the emblem was of NOI, not NGE. His grievance was deemed "founded," a picture of the NOI emblem was taken, the NOI emblem was returned to him, and Plaintiff was told that "this would never happen again."

must also renew their history, which means that they must constantly revisit the lesson . . . ." The VDOC's confiscation of the documents is permanent, meaning Plaintiff is never able to possess the materials or practice that part of his religious faith while within VDOC facilities.

Plaintiff was charged with possessing gang-related materials. After being served with the charge, being informed of his rights about a disciplinary hearing, and presenting evidence at the disciplinary hearing, defendant Hostetter, the disciplinary hearing officer ("DHO"), found Plaintiff guilty of possessing gang-related material after relying on Lokey's testimony that the documents constituted "Five Percenter" contraband. Hostetter penalized Plaintiff with thirty days' loss of commissary privileges, and defendant Warden Woodson upheld the conviction on appeal.

Plaintiff also filed grievances about the confiscation of his documents. Warden Woodson determined the grievance to be unfounded because only the seized documents were considered to be "Five Percenter" material and all other documents were returned. Defendant Hinkle, the VDOC Regional Administrator, upheld Warden Woodson's response.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could

3

return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-23. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.
### A.

Plaintiff argues that the confiscation of the documents violated due process guaranteed by the Fourteenth Amendment. Generally, the following procedural protections must be employed at an institutional disciplinary proceeding resulting in the loss of a protected interest: (1) an impartial tribunal, (2) written notice of the charges prior to the hearing, (3) an opportunity to call witnesses and present documentary evidence, (4) aid from a fellow inmate or staff representative if the issues are complex, and (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action. See, e.g., Wolff v. McDonnell, 418 U.S. 538, 563-71 (1974). When an inmate challenges the sufficiency of the evidence underlying a disciplinary conviction resulting in the deprivation of a protected interest, the evidence is sufficient when "the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985). Notably,

4

"[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Id. at 455.

Plaintiff received a copy of his disciplinary offense report prior to the hearing, had the services of an advisor, and was present during the disciplinary hearing.[3] During that hearing, Lokey testified that, based on his training, Plaintiff's cell contained banned Five-Percenter documents, and Plaintiff admitted that the contraband documents belonged to him. Defendant Hostetter, who by all indications was impartial, found Plaintiff guilty of possessing Five-Percenter documents and issued a written report describing the evidence relied upon and the reasons for revoking Plaintiff's commissary privileges for thirty days.[4] Although not required, the VDOC permits an appeal, which Plaintiff pursued unsuccessfully. Plaintiff was afforded constitutionally sufficient process, there was "some evidence" in the record to support finding the documents to be contraband, and I do not need to compel the disclosure of the confiscated documents "to examin[e] . . . the entire record, independent[ly] assess[] . . . the credibility of witnesses, or weigh[] . . . the evidence" to adjudicate the due process claim.[5] Id. Accordingly, Defendants' motion for summary judgment is granted for the due process claim.

---

[3] Although Plaintiff alleges that officials failed to comply with VDOC policy governing the issuance of forms when staff confiscate inmate property, staff's failure to abide by all of the VDOC's procedural rules and regulations does not, in and of itself, state a federal due process claim. See, e.g., Riccio v. Cnty. of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir. 1990).

[4] To the extent Plaintiff argues that Defendants intentionally or negligently confiscated property that should not have been confiscated as Five Percenter documents, he fails to state a federal due process claim. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[U]nauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); Parratt v. Taylor, 451 U.S. 527, 542-53 (1981) (overruled in irrelevant part by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)). Plaintiff possesses a post-deprivation remedy under Virginia law: the Virginia Tort Claims Act. See, e.g., Wadhams v. Procunier, 772 F.2d 75, 78 (4th Cir. 1985); Va. Code §§ 8.01-195.3, et. seq.

[5] As such, I do not need to defer adjudication of Defendants' motion for summary judgment in accordance with Rule 56(d), Fed. R. Civ. P., for the federal due process claim.

5

**B.**

Plaintiff argues that the confiscation of the documents violated his rights under RLUIPA and the First Amendment's Free Exercise Clause because the confiscated documents were "essential to the practice of his religion as they are required reading by the faithful." Because he is an adherent of NOI and does not use the documents for "Five Percenter" purposes, Plaintiff reasons that he should be permitted to possess them in order to practice NOI. Notably, Defendants have not provided the confiscated documents to the court and have not attempted to explain why Lokey and Leatherwood "determined that a number of [Plaintiff's NOI documents] were related to the Five Percenters and the Black Panthers."

RLUIPA, in relevant part, provides that no government shall impose a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-1(a). The First Amendment precludes a state from impinging on a prisoner's constitutional right to religious freedom unless the reason for doing so is reasonably related to legitimate penological interests.[6] Turner v. Safley, 482 U.S. 78, 89 (1987); see, e.g., Cantwell v. Connecticut, 310 U.S. 296, 303 (1940).

---

[6] That "reasonableness" test depends on
(1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.
Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006) (citing Turner, 482 U.S. at 89-92).

6

I find that, for purposes of summary judgment, Plaintiff establishes a sincerely-held religious need for the confiscated documents because the documents are necessary to practice his personal faith. See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005) (recognizing a personal practice that is both sincerely held and rooted in religious belief falls under the protections of RLUIPA); United States v. Seeger, 380 U.S. 163, 185 (1965) (noting a court must decide whether a plaintiff sincerely held the avowed belief and whether the belief is, in a plaintiff's own scheme of things, religious). Furthermore, Plaintiff establishes a substantial burden because he explains that he cannot practice his religion belief without memorizing the documents taken away from him. See Lovelace, 472 F.3d at 187 (noting a "substantial burden" on religious exercise occurs if it puts substantial pressure on an adherent to modify his behavior and to violate his beliefs).

However, the question remains unresolved whether the VDOC's confiscation of the NOI documents, in accordance with Plaintiff's allegations and the required perspectives for Rule 56, was an exaggerated response or the least restrictive means of furthering the VDOC's compelling governmental interest in banning NGE documents. First, a dispute exists whether the documents were, in fact, related to NGE.[7] Plaintiff explains that the documents were not related to NGE, the documents were created before the advent of NGE, the confiscated documents had never been seized as gang paraphernalia for more than fourteen years across ten different prisons, and other NOI adherents at ACC continue to possess their copies of *The Supreme Wisdom* lessons. Unlike

---

[7] The due process inquiry looked at whether there was some evidence before the DHO to support a finding of guilt. Defendants seek to import that deferential level of scrutiny into the First Amendment and RLUIPA analysis, essentially deferring again to the DHO's finding. Defendants argue that, because the DHO found "some evidence" that the confiscated documents were related to NGE, the confiscated documents must have been related to NGE. I decline the invitation, however, as, more broadly, such a decision would routinely insulate violations of religious rights from strict scrutiny, replaced instead by the exceptionally deferential standard of "some evidence" under Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985). Cf. Edwards v. Balisock, 520 U.S. 641, 646-47 (1997) (invoking the bar pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), in the prison context for the revocation of good-time credits). Furthermore, resolving conflict in a light most favorable to Defendants would contradict the well-established perspective required for summary judgment.

Case 7:14-cv-00457-EKD-RSB   Document 28   Filed 05/22/15   Page 7 of 10   Pageid#: 268

the multitude of cases involving NGE, Plaintiff specifically disclaims ever having any association with NGE and, instead, professes that he has practiced only NOI and possessed NOI religious documents that were confiscated erroneously as being related to NGE.[8] Cf. Allah v. Virginia, No. 2:12-cv-00033, 2014 U.S. Dist. LEXIS 58529, 2014 WL 1669331 (W.D. Va. Apr. 28, 2014) (Jones, J.) (finding in favor of the VDOC that its security interests outweigh the right of a Five Percenter to possess NGE material and that the total ban was the least restrictive means of preventing Five Percenters from jeopardizing institutional safety), aff'd, No. 14-6793, 2015 U.S. App. LEXIS 3048, 2015 WL 845580 (4th Cir. Feb. 27, 2015). Furthermore, Defendants, assuming that Plaintiff is a Five Percenter, offer no explanation or reasoning for confiscation of the alleged NOI documents other than defendant Leatherwood's statement that she "determined that a number of [Plaintiff's NOI documents] were related to the Five Percenters and the Black Panthers."

Even if the VDOC's no-tolerance policy about possessing gang-related material may further a compelling government interest, Defendants have not sufficiently established, in light of the current record and disputes of material facts, that confiscating NOI religious documents that are not gang-related from someone who is not a Five Percenter or in a gang, as Plaintiff alleged, is reasonable or the least restrictive means of controlling the proliferation of NGE. See, e.g., Marria v. Broaddus, 2004 U.S. Dist. LEXIS 14829, 2004 WL 1724984 (S.D.N.Y. July 30, 2004) (approving New York's correctional policies permitting NGE documents after determining a total ban of possession by Five Percenters did not constitute the least-restrictive means). As Plaintiff

---

[8] Indeed, Plaintiff even admits that, if the confiscated documents were "Five Percenter" material, "the VDOC policy requiring confiscation . . . is rationally-related to a legitimate penological interest [and] the Defendants have not violated Plaintiff's religious rights." Additionally, Plaintiff does not facially challenge the VDOC confiscation policy of Five-Percenter material but argues that its misapplication to NOI documents violates the First Amendment.

8

argues, banning NOI religious texts as gang related "is no different than falsely accusing a Muslim of being a terrorist because he is in possession of a Holy Quran as the Taliban who has been labeled a terrorist group also profess to use and possess the Holy Quran. Or, if a Caucasian Christian is profiled as a white supremacist because he is in possession of a Bible and the Klu Klux Klan also profess to use and possess the Bible. Each case has to be scrutinized as to its own unique set of facts as well as the individual involved."

Accordingly, Defendants' motion for summary judgment is denied as to the RLUIPA and related First Amendment claims against defendants Lokey and Leatherwood due to disputes of material facts.[9] See Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) ("[A] genuine dispute of material fact will preclude summary judgment on qualified immunity."); see also Wall v. Wade, 741 F.3d 492, 502-03 (4th Cir. 2014) (rejecting a defense of qualified immunity based on "clearly-established law" because, even though the specific issue of a sincerity test had not be clearly established, the broader clearly-established law of accommodating religious rights absent a "legitimate" reason to the contrary controlled). However, the motion is granted as to the First Amendment and RLUIPA claims against the remaining defendants because, assuming Plaintiff's allegations are true, defendants Hostetter, Woodson, and Hinkle acted, at most, negligently by not conducting their own independent investigation into Plaintiff's claims and by relying solely on Lokey and Leatherwood's determination.[10] See Lovelace, 472 F.3d at 194-96, 201-02 ("That is, [the wardens'] decision to

---

[9] I note that Plaintiff cannot recover damages against Defendants under RLUIPA or in their official capacities under 42 U.S.C. § 1983. Sossamon v. Texas, 131 S. Ct. 1651, 1658-59 (2011); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009); Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996).

[10] Plaintiff also concedes that Hostetter, Woodson, and Hinkle are entitled to "qualified-judicial immunity." See, e.g., Ward v. Johnson, 690 F.2d 1098, 1109-13 (4th Cir. 1982) (en banc); Burt v. Mitchell, 589 F. Supp. 186, 192 (E.D. Va. 1984).

9

trust [the officer]'s [allegation] reflects at most a failure to take due care with respect to the risk that [the officer] was mistaken or deceptive. Summary judgment in favor of [the wardens] in their individual capacities was thus proper on the RLUIPA [and First Amendment] claim[s].").

## C.

Plaintiff also presents state law claims pursuant to the Virginia Tort Claims Act ("VTCA") found at Virginia Code §§ 8.01-195.1, et seq. and for detinue under Virginia Code § 8.01-114.[11] Pursuant to 28 U.S.C. § 1367(c)(4), the VTCA claim will be dismissed without prejudice because the Commonwealth of Virginia enjoys sovereign immunity for VTCA claims brought in federal court. McConnell v. Adams, 829 F.2d 1319, 1328 (4th Cir. 1987). Because Defendants have not addressed the action for detinue to recover the seized items or their values, the action for detinue shall also continue to trial.

## IV.

For the foregoing reasons, I deny Defendants' motion for summary judgment as to the RLUIPA and First Amendment claims against Lokey and Leatherwood and the state law claim for detinue. I dismiss Plaintiff's VTCA claim without prejudice, and I grant Defendants' motion for summary judgment as to the other claims.

**ENTER:** This 22nd day of May, 2015.

Senior United States District Judge

---

[11] Plaintiff alleges in the complaint that Lokey has retained possession of the confiscated documents.

10